IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| COURTNEY LYNN HIMES AKKUS, et al., | * |
| | * |
| Plaintiffs, | * |
| v. | *  Civil Action No. GLR-22-2933 |
| | * |
| ROCKET MORTGAGE, LLC, | * |
| Defendant. | * |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Rocket Mortgage, LLC's Motion to Dismiss (ECF No. 32). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant the Motion in part and deny it in part.

### I.   BACKGROUND[1]

**A.   Factual Background**

This class action concerns Rocket Mortgage's alleged violations of the Real Estate Settlement Procedures Act ("RESPA") while managing escrow accounts. (Am. Comp. ¶¶ 1, 6, ECF No. 31). Named Plaintiffs Courtney Lynn Himes Akkus, Erkan Akkus, Jonathan Perry, and Lydia Perry (collectively, "Plaintiffs") are homeowners, and Rocket Mortgage is their mortgage servicer. (See id. ¶¶ 53, 34). The Akkuses bought their home (the "Akkus Property") in Baltimore on June 22, 2021. (Id. ¶ 30). They pre-paid the first

---

[1] Unless otherwise noted, the Court takes the following facts from the Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

$2,575.00 installment of property taxes due to Baltimore City for the 2021–2022 tax year. (Id. ¶ 31). Their settlement required them to make monthly payments in escrow towards taxes and insurance, and Rocket, as the loan servicer, was bound by RESPA to pay the taxes to Baltimore City. (Id. ¶¶ 5, 32). The Akkuses made timely payments from August through December 2021, but Rocket Mortgage failed to pay the 2021–2022 tax installment due to Baltimore City in December 2021. (Id. ¶¶ 36–37). As a result, Baltimore City "listed, identified, and published the Akkus Property as potentially subject to Baltimore's 2022 tax sale for unpaid property taxes." (Id. ¶ 39). The Akkuses allege that the publication "put them into a false, negative light that they were financially irresponsible." (Id. ¶ 40).

On January 12, 2022, Rocket Mortgage wrote to the Akkuses to tell them that servicing on their mortgage loan would transfer from Rocket Mortgage to Lakeview and Lakeview's sub-servicer, Mr. Cooper, on February 1, 2022. (Id. ¶ 41). Shortly thereafter, the Akkuses realized that Rocket Mortgage had failed to pay the December 2021 taxes. (Id. ¶ 42). They contacted Rocket Mortgage about the missing payment on February 8, 2022, and an employee told them to raise the issue with Lakeview/Mr. Cooper, "even though it was Rocket who omitted its legal and contractual duty." (Id. ¶ 43).

The Akkuses then received a Short Year Statement dated February 5, 2022, from Rocket Mortgage in which Rocket Mortgage admitted that it had not disbursed the December 2021 tax payment. (Id. ¶ 44). Because neither Rocket Mortgage nor Lakeview/Mr. Cooper had paid the taxes, the Akkuses personally paid Baltimore City $2,690.87, which included $274.98 in interest and penalties. (Id. ¶ 45). On March 29, 2022, the Akkuses sent a Qualified Written Request ("QWR") Letter to Rocket Mortgage. (Id.

2

¶ 46). Rocket Mortgage acknowledged receipt but never responded, performed an investigation, or provided the requested documents, such as records of how Rocket Mortgage accounted for the Akkuses' payments and what escrow sums were transferred by it to Lakeview/Mr. Cooper. (Id. ¶ 47). The Akkuses allege that because of Rocket Mortgage's actions, they have suffered emotional damages and had to pay for postage while asserting their rights under RESPA. (Id. ¶ 50). They further say that although they received a $2,402.75 refund of the unpaid taxes from Lakeview/Mr. Cooper, the payment did not include the penalties and interest fees. (Id. ¶ 51).

As for the Perrys, they bought their Philadelphia home (the "Perry Property") on July 31, 1978. (Id. ¶ 52). On January 4, 2021, they refinanced their prior mortgage loan with Quicken/Rocket Mortgage. (Id. ¶ 53). They paid the 2021 taxes in advance, and Rocket Mortgage knew that they made this payment. (Id. ¶ 58). In Philadelphia, real estate taxes must be paid annually by March 31. (Id. ¶ 57). Rocket Mortgage subsequently sold the loan to Fannie Mae while retaining the servicing and collection rights. (Id. ¶ 56).

On February 27, 2021, Rocket Mortgage paid the 2021 taxes from the Perrys' escrow account, even though it was aware that the Perrys already paid. (Id. ¶ 58). As a result, the loan was subject to an off-schedule escrow analysis, and the Perrys' monthly payments increased by 17% per month. (Id.). The Perrys requested that Rocket Mortgage correct its error via phone, email, and Better Business Bureau ("BBB") complaints between October 29, 2021, and September 22, 2022. (Id. ¶ 59). Rocket Mortgage did not respond to these requests until March 28, 2022, when it sent correspondence to the BBB confirming

the errors. (Id. ¶ 61). In May 2022, Rocket Mortgage sent the Perrys a check for $2,427.87 with no explanation. (Id. ¶ 62).

In June 2022, the Perrys learned that Rocket Mortgage had failed to pay the 2022 property tax—for which it had collected escrow payments from them—to Philadelphia, and the city threatened to sell the Perry Property at a Sheriff's sale. (Id. ¶¶ 63–64). The Perrys personally paid $1,360 to Philadelphia, which included interest and penalties, on June 30, 2022. (Id. ¶ 65). At the time they made this payment, they were unaware that Rocket Mortgage had paid the taxes the previous week. (Id. ¶ 66). In a letter dated July 19, 2022, Rocket Mortgage confirmed that it had made the payment late, but denied that interest was due. (Id. ¶ 68). Rocket Mortgage also disclaimed responsibility for obtaining a refund from Philadelphia. (Id. ¶ 69).

On December 10, 2022, the Perrys sent a QWR Letter to Rocket Mortgage. (Id. ¶ 71). Rocket Mortgage did not timely acknowledge receiving the letter, did not perform an investigation, never provided the requested documents, and did not correct its errors. (Id. ¶ 72). The Perrys allege that they never received a tax refund, and that they suffered other damages including the increased mortgage payments, emotional distress, postage, and traveling costs to Philadelphia to request refunds. (Id. ¶¶ 73–74).

**B.**   **Procedural History**

The Akkuses filed the original Complaint on behalf of themselves and a class of Rocket Mortgage loan borrowers in the Circuit Court for Anne Arundel County on October 6, 2022. (ECF No. 4). On November 11, 2022, Rocket Mortgage removed the case to this Court on the basis of federal question jurisdiction. (Notice of Removal at 1, ECF No. 1).

On January 18, 2023, the Perrys filed a Motion to Intervene. (ECF No. 22). By consent, Plaintiffs filed an Amended Complaint on January 30, 2023. (ECF No. 31). The Amended Complaint contains the following claims: violation of RESPA, 12 U.S.C. § 2605(g), for failure to pay taxes from the escrow accounts as to the named Plaintiffs and the class (Count I); violation of RESPA, 12 U.S.C. § 2605(e)(k) and 12 C.F.R. §§ 1024.35, 1024.36 as to the Akkuses for Rocket Mortgage's failure to respond to or conduct a reasonable investigation of the QWR letter (Count II); and violation of RESPA, 12 U.S.C. § 2605(e)(k) and 12 C.F.R. §§ 1024.35, 1024.36 as to the Perrys for Rocket Mortgage's failure to respond to or conduct a reasonable investigation of the QWR letter (Count III). (Am. Compl. ¶¶ 91–121). Plaintiffs seek compensatory and statutory damages. (Id. ¶¶ 114, 121). On March 1, 2023, Rocket Mortgage filed the instant Motion to Dismiss. (ECF No. 32). Plaintiffs filed an Opposition on March 27, 2023, (ECF No. 35), and Rocket Mortgage filed a Reply on April 24, 2023, (ECF No. 38).

## II.   DISCUSSION

**A.   Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

5

Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979) (finding dismissal of complaint proper because plaintiffs' "conclusory allegations" of discrimination were unsupported by "reference to particular acts, practices, or policies"), or legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B.       Analysis**

    **1.       Count I – Failure to Pay Property Taxes from the Escrow Accounts**

In Count I of the Amended Complaint, Plaintiffs allege that Rocket Mortgage failed to timely pay property taxes from the Akkuses' and the Perrys' escrow accounts, and that Rocket Mortgage had a pattern, practice, or custom of failing to make necessary payments for the class of borrowers. (Am. Compl. ¶¶ 91–106). Rocket Mortgage argues for partial dismissal of Count I as to the claim for statutory damages because Plaintiffs cannot show the requisite pattern or practice necessary to recover such damages. (Mem. Supp. Mot. Dismiss ["Mot."] at 6, ECF No. 32-1).

RESPA requires loan servicers to "make payments from the escrow account" of any borrower "for taxes, insurance premiums, and other charges in a timely manner as such payments become due." 12 U.S.C. § 2605(g). Plaintiffs may obtain actual damages for the servicer's failure to comply with the law, § 2605(f)(1)(A), (f)(2)(A), and they may also claim statutory damages not to exceed $2,000 per individual[2] if a defendant has "a pattern or practice of noncompliance with the requirements of this section." 12 U.S.C. § 2605(f)(1)(B), (f)(2)(B). Courts have interpreted the phrase "pattern or practice" to mean "a standard or routine way of operating." Ponds v. Nationstar Mortg., LLC, No. CV 15-8693-DMG (JPRx), 2016 WL 3360675, at *6 (C.D.Cal. June 3, 2016); Layne v. Nationstar Mortg. LLC, No. SACV162170DOCGJSX, 2017 WL 736868, at *4 (C.D.Cal. Feb. 24,

---

[2] In the case of a class action like the instant case, statutory damages may not exceed the lesser of $1,000,000 or one percent of the servicer's net worth. 12 U.S.C. § 2605 (f)(2)(B).

7

2017). The case law determining whether a plaintiff has established a "pattern or practice" is still developing, but federal district courts have held that one or two RESPA violations alone are insufficient. E.g., Schoen v. Bank of Am., N.A., No. 2:17-CV-648, 2019 WL 590882, at *10 (S.D.Ohio Feb. 13, 2019) (citation omitted) (finding two RESPA violations insufficient to establish pattern or practice of noncompliance).

As a preliminary matter, the parties dispute the meaning of the phrase "a pattern or practice of noncompliance with the requirements of this section." 12 U.S.C. § 2605(f). Plaintiffs argue that this language broadly refers to all violations of § 2605, and thus they can show a pattern or practice of noncompliance "relate[d] to any violation of § 2605—not simply violations contained within the same subsection." (Mem. L. Opp'n Mot. Dismiss ["Opp'n"] at 9, ECF No. 35).[3] Rocket Mortgage reads the statute narrowly, meaning that Plaintiffs must allege violations involving the same conduct from the same subsection of § 2605. (Mot. at 13). Stated differently, Rocket Mortgage contends that Plaintiffs must show a pattern or practice of nonpayment of property taxes from escrow accounts. (See id.).

Statutory interpretation begins with a determination of "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." United States v. Abuagla, 336 F.3d 277, 278 (4th Cir. 2003) (quoting Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002)). Courts "must consider the context in which the statutory words are used because [courts] do not . . . construe statutory phrases in

---

[3] Citations to the Opposition's page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

isolation; [they] read statutes as a whole." Sijapati v. Boente, 848 F.3d 210, 215 (4th Cir. 2017) (citations and quotations omitted). Further, courts should avoid interpretations that "would produce absurd results" contrary to congressional intent. United States v. Joshua, 607 F.3d 379, 387 (4th Cir. 2010) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575 (1982)).

Under these principles, the Court finds that the plain meaning of the words "pattern or practice of noncompliance with this section," read in context, require RESPA plaintiffs to show that the defendant has repeatedly violated § 2605. The absence of the word "subsection" from the statute is noteworthy, and it indicates that Congress did not intend to confine "pattern or practice" to a single subsection. To conclude otherwise would be contrary to the remedial intent of the statute. See § 2605(f) (providing for liability to the borrower for failure to comply with any provision in § 2605); Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 665–66 (9th Cir. 2012) (quoting In re Herrera, 422 B.R. 698, 711–12 (B.A.P. 9th Cir. 2010)) ("RESPA's provisions . . . should be 'construed liberally' to serve the statute's remedial purpose."); Marais v. Chase Home Fin., 736 F.3d 711, 719 (6th Cir. 2013) (citing In re Carter, 553 F.3d 979, 985–86, n.5 (6th Cir. 2009)) ("As a remedial statute, RESPA is construed broadly to effectuate its purpose."); Ploog v. HomeSide Lending, Inc., 209 F.Supp.2d 863, 870 (N.D.Ill. 2002) (explaining that RESPA is a consumer protection statute that should be "interpreted broadly.").

Rocket Mortgage argues that this interpretation creates an "absurd" result because § 2605 contains a variety of requirements and prohibitions for loan servicers, such as the need to disclose whether the servicing of the loan will be transferred, § 2605(a), and the

9

prohibition on late fees within sixty days of a servicing transfer if the payment was timely received, § 2605(d). (Mot. at 14). Rocket Mortgage avers that such actions are unrelated and cannot evince a pattern or practice. (Id. at 14–15). The Court disagrees. Congress grouped these actions together under § 2605, which is titled "Servicing of mortgage loans and administration of escrow accounts," and it provided for damages for "a pattern or practice of noncompliance with this section." § 2605(f). It is therefore perfectly logical to conclude that Congress viewed the actions as related, and that courts should view them as such. Although the case law interpreting RESPA statutory damages claims is still developing, Rocket Mortgage does not identify a single authority limiting "a pattern or practice" to identical violations from the same subsections, and several federal district courts have found that violations of different § 2605 subsections can constitute a pattern or practice, see, e.g, Kapsis v. Am. Home Mortg. Servicing Inc., 923 F.Supp.2d 430, 448–49 (E.D.N.Y. 2013) (plaintiff stated claim for statutory damages when he alleged failure to respond to QWRs and failure to correct errors in loan servicing. These are separate subsections under § 2605 (k)(1) and (e)(2)).

Having determined that Plaintiffs may plead violations of multiple § 2605 sections to show a pattern or practice of RESPA noncompliance, the Court now turns to whether they have alleged sufficient facts to state a claim for statutory damages. Plaintiffs allege the following facts in support of their claim:

- Rocket Mortgage failed to pay property tax due from the Akkuses' account for the 2021–2022 tax year, (Am. Compl. ¶ 37);
- Rocket Mortgage failed to reasonably investigate following the Akkuses' March 29, 2022 QWR, (id. ¶ 50);

- Rocket Mortgage mismanaged the Perry's escrow account on February 27, 2021, when it paid property taxes that had already been paid, (id. ¶ 58);
- Rocket Mortgage failed to respond to inquiries and QWRs from the Perrys thirteen times, (id. ¶ 59);
- There are at least four currently pending lawsuits in federal court alleging either failure to pay sums due from escrow or issues responding to inquires or QWRs, (id. ¶¶ 105–106);
- There are at least five Consumer Financial Protection Bureau ("CFPB") complaints alleging similar RESPA violations to those claimed by the named Plaintiffs, (id.);
- On information and belief, members of the class have similarly been the victims of Rocket Mortgage's RESPA violations, (id. ¶ 81).

These allegations are sufficient to show a pattern or practice of noncompliance at this stage in the litigation. See Ayres v. Ocwen Loan Servicing, LLC, 129 F.Supp.3d 249, 266 (D.Md. 2015) ("Plaintiffs have alleged that Ocwen continuously failed to respond to their QWRs, and that Ocwen has engaged in similar conduct in the past . . . These facts are sufficient to allege statutory damages under RESPA.").

In an effort to avoid this result, Rocket Mortgage argues that Plaintiffs have failed to state a claim because they cannot rely upon their own allegations or the existence of public complaints and lawsuits which have not resulted in a judgment against it for violations of RESPA. (Mot. at 7–11). As to the first argument, it is true that a single plaintiff in a RESPA case generally cannot rely only on his own experience to plead a pattern or practice of noncompliance. See Toone v. Wells Fargo Bank, N.A., 716 F.3d 516, 523 (10th Cir. 2013) (rejecting argument that pattern or practice of noncompliance could be inferred from failure to respond to plaintiffs' own requests). Nevertheless, named Plaintiffs here are two separate couples alleging RESPA violations in separate jurisdictions and

11

circumstances, and they further allege that other class members have suffered similar violations in loan servicing. Thus, Plaintiffs do not rely only on the experience of a single borrower, and the Court will not dismiss the statutory damages claim on this basis. See Kapsis, 923 F.Supp.2d at 449 (plaintiff stated a claim for statutory damages because he alleged multiple RESPA violations in his personal experience in addition to similar allegations on behalf of class members).

Second, while many courts have refused to accept pending or settled lawsuits or consumer complaints as proper allegations in support of statutory damages claims, see Malcolm v. Seterus, Inc., No. 5:18-CV-01937, 2020 WL 1434496, at *6 (N.D.Ohio Mar. 24, 2020) (finding the existence of two similar lawsuits against defendant did not show a pattern or practice of noncompliance with RESPA where one case was decided on summary judgment in favor of defendant and the parties settled in the other); Layne, 2017 WL 736868, at *4 ("Plaintiffs plead no authority or evidence suggesting that these other lawsuits actually concerned [defendant's] pattern of noncompliance with RESPA, and even if they did . . . that Plaintiffs can use consent judgments in other lawsuits to establish [defendant's] pattern of noncompliance with RESPA in this case.") (cleaned up); Bennett v. Nationstar Mortg., LLC, No. CA 15-00165-KD-C, 2015 WL 5294321, at *12 (S.D.Ala. Sept. 8, 2015) ("[consumer] complaints do not equate to 'noncompliance'"),[4] this is not

---

[4] The district court in Bennett left open the possibility that there may be "a threshold number of alleged consumer complaints that would sufficiently plead a pattern of noncompliance," but declined to speculate as to what that number would be absent clear case law and facts concerning the "details, merit, or resolution of those supposed complaints." Bennett, 2015 WL 5294321, at *12. This Court likewise declines to speculate as to whether such public complaints could state a claim for statutory damages.

true of all courts that have encountered this issue. See Obazee v. Bank of New York Mellon, No. 3:15-CV-1082-D, 2015 WL 8479677, at *3 (N.D.Tex. Dec. 10, 2015) (finding allegations of several lawsuits against defendant for alleged RESPA violations and over 1,400 consumer complaints sufficient to state a claim for statutory damages absent more fully developed caselaw as to what is necessary to plead a pattern or practice of noncompliance under RESPA). Regardless, the Court need not take a position on this issue here, as Plaintiffs have established a pattern or practice of noncompliance based on Rocket Mortgage's many violations in servicing the named Plaintiffs' loans and the class allegations.

Accordingly, the Motion to Dismiss will be denied to the extent that it seeks dismissal of the statutory damages claim in Count I.

### 2. Counts II and III – Failure to Respond Properly to the QWR Letters

In Counts II and III, the Akkuses and the Perrys, respectively, allege that Rocket Mortgage failed to properly respond to inquiries or QWR letters. (Am. Compl. ¶¶ 108–121). They claim actual and statutory damages on this basis. (Id.). Specifically, Plaintiffs claim postage costs and emotional damages such as loss of sleep, anger, fear, and anxiety. (Id. ¶¶ 11–12, 50, 73). Rocket Mortgage argues that Counts II and III must be dismissed because Plaintiffs have failed to plead actual or statutory damages. (Mot. at 16–17). The Court agrees with Rocket Mortgage.

RESPA requires a mortgage servicer to acknowledge receipt of a borrower's QWR within five days and respond within thirty days. See 12 U.S.C. § 2605(e)(1)–(2). Specifically, within thirty days after receipt of a QWR, a servicer must conduct an

13

investigation and "provide the borrower with a written explanation or clarification." Id. § 2605(e)(2). Nevertheless, "allegations that a servicer breached a duty under RESPA without causing any actual harm fails to state a claim under the statute." Fox v. Statebridge Co., LLC, 629 F.Supp.3d 300, 310 (D.Md. 2022). Further, if a plaintiff fails to show actual damages, she likewise may not claim statutory damages for any alleged pattern or practice of noncompliance. See Robinson v. Nationstar Mortg. LLC, No. CV TDC-14-3667, 2019 WL 4261696, at *10 (D.Md. Sept. 9, 2019) ("Where the Robinsons may be able to show that they have suffered actual damages, their claim for statutory damages . . . remains viable"); Morgan v. Bayview Loan Servicing, LLC, No. 3:20cv304, 2020 WL 6626120, at *3 n.6 (E.D.Va. Nov. 12, 2020) (noting that plaintiff could allege statutory damages based on a pattern or practice of noncompliance with RESPA if she alleged actual damages).

Actual damages must arise as a result of the alleged violation. Fox, 629 F.Supp.3d at 310 (citing 12 U.S.C. § 2506(f)(1)(A)); Sharma v. Rushmore Loan Mgmt. Servs., LLC, 611 F.Supp.3d 63, 85 (D.Md. 2020) ("A plaintiff must allege a 'plausible causal connection between her emotional damages and the alleged RESPA violations.'") (quoting Darby v. PNC Mortg., Nat'l Ass'n, No. DKC 16-0210, 2016 WL 7212568, at *3 n.4 (D.Md. Dec. 13, 2016)). Thus, the Akkuses and the Perrys must show that they suffered damages as a direct result of Rocket Mortgage's failure to respond to their QWRs. Courts have held that "emotional distress, without more, does not establish the causal link necessary to show actual damages." Fox, 629 F.Supp.3d at 311 (citation omitted); Sharma, 611 F.Supp.3d at 85 (explaining that emotional damages may be plead alongside economic damages). Additionally, courts in the Fourth Circuit have rejected actual damages claims for voluntary

postage costs and attorneys' fees associated with sending QWRs and follow-up letters. Fox, 629 F.Supp.3d at 311.

Here, Plaintiffs do not allege any economic damages except for postage fees as a result of Rocket Mortgage's failure to respond to QWRs. Plaintiffs argue that, contrary to this Court's prior rulings, they can recover postage costs because Rocket Mortgage never responded to some of the QWRs at all. (Opp'n at 35). Plaintiffs do not cite any authority to support this point, and thus the Court concludes the postage fees are insufficient to state a claim for actual damages. See Fox, 629 F.Supp.3d at 311. As for the alleged emotional damages, they cannot, on their own, establish actual damages. See id. (quoting Kareem v. PHH Mortg. Corp., No. CV 20-7846 (RBK/MJS), 2022 WL 602922, at *6 (D.N.J. Mar. 1, 2022)) ("an allegation that . . . failure to respond to a QWR letter caused the plaintiff emotional distress, without more, does not . . . show actual damages"). Further, there is no plausible connection between the emotional damages and Rocket Mortgage's failure to respond to QWRs. In the Amended Complaint, Plaintiffs allege that they suffered "garden variety emotional distress" when Rocket Mortgage failed to respond, but it appears that their emotional distress was instead caused by the failure to pay taxes, which credibly caused emotional distress from the financial implications and the fear of losing their homes. (Am. Compl. ¶ 50); see also Sharma, 611 F.Supp.3d at 85 (explaining that plaintiff's alleged fear that defendant would continue to ignore her QWRs was insufficient to show actual damages, but that her alleged fear that her home would be taken as a result of defendant's failure to pay taxes was sufficient).

15

Accordingly, Plaintiffs have failed to show actual damages, and without actual damages, they cannot recover statutory damages. See Robinson, 2019 WL 4261696, at *10. Counts II and III will be dismissed.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Rocket Mortgage's Motion to Dismiss (ECF No. 32) in part and deny it in part. The Motion will be granted as to Counts II and III and otherwise denied. Rocket Mortgage shall answer the Amended Complaint as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. A separate Order follows.

Entered this 7th day of February, 2024.

                                                 /s/
                                    George L. Russell, III
                                    United States District Judge