IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

COURTNEY LYNN HIMES AKKUS,      *
et al.,
                                *

        Plaintiffs,
                                *        Civil Action No. GLR-22-2933
v.
                                *

ROCKET MORTGAGE, LLC,
                                *

        Defendant.
                               ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiffs Courtney Lynn Himes Akkus, Erkan Akkus, Jonathan Perry, and Lydia Perry's (collectively, "Plaintiffs") Motion for Class Certification (ECF No. 116), Defendant Rocket Mortgage, LLC's ("Rocket Mortgage") Motion for Summary Judgment (ECF No. 121), and Plaintiffs' Cross-Motion for Summary Judgment (ECF No. 130).[1] The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will deny Plaintiffs' Motion for Class Certification, deny Rocket Mortgage's Motion for Summary Judgment, and deny Plaintiffs' Cross-Motion for Summary Judgment.[2]

---

[1] Plaintiffs title their Motion as follows: "Plaintiff's Combined Motion for Summary Judgment as to Liability and Opposition to Defendant's Motion for Summary Judgment." (ECF No. 130). For ease of reference, the Court refers to the Motion throughout as "Plaintiffs' Cross-Motion for Summary Judgment."

[2] Also pending before the Court is Rocket Mortgage's Motion to Strike allegedly improper legal conclusions and argumentative characterizations made in Plaintiffs'

## I.   BACKGROUND

### A.   Factual Background

The Court provided a complete description of the facts at issue in this case in its February 7, 2024 Memorandum Opinion (ECF No. 39), which it incorporates here by reference. The Court will not repeat that description in its entirety and will instead provide a brief summary.

Plaintiffs Courtney Lynn Himes Akkus, Erkan Akkus, Jonathan Perry, and Lydia Perry are borrowers on residential mortgage loans serviced by Defendant Rocket Mortgage and owned by Fannie Mae. (Pls.' Statement Undisputed Facts ["Pls.' SOF"] ¶ 1, ECF No. 119). As the loan servicer, Rocket Mortgage was responsible for making timely tax and/or insurance payments from Plaintiffs' escrow accounts by specified due dates. (Id. ¶ 2).

#### 1.   The Akkuses' Loan

On June 22, 2021, Courtney and Erkan Akkus (the "Akkuses") obtained a mortgage loan from Rocket Mortgage to purchase residential property in Baltimore, Maryland. (Am. Compl. ¶¶ 13, 17, 30, ECF No. 31). At closing that day, the Akkuses elected for their

---

Statement of Material Facts. (Mot. Strike at 1, ECF No. 135). According to Rocket Mortgage, Plaintiffs made legal conclusions that Rocket Mortgage has a pattern or practice of noncompliance with the Real Estate Settlement Procedures Act ("RESPA") and that Plaintiffs experienced reputational harm and loss of use of their monies. (Id. at 2–5). Additionally, Rocket Mortgage asserts that Plaintiffs relied on "inflammatory rhetoric designed to prejudice rather than inform" when characterizing Rocket Mortgage's conduct. (Id. at 8). Because the Court did not rely on Plaintiffs' alleged inflammatory and conclusory statements in its ruling herein, it declines to address Rocket Mortgage's arguments, and the Motion will be denied as moot. See BPP Indep. Fayetteville, LLC v. Indep. Place W. Fayetteville, LLC, No. 5:20-CV-212-FL, 2022 WL 16709051, at *2 (E.D.N.C. May 27, 2022) ("Where the court does not rely on defendants' purportedly improper [] statement of facts . . . it need not address the merits of plaintiffs' motion to strike.").

property tax payments to be paid semi-annually and rendered the first installment on their 2021 property taxes. (Lech Dep. 22:9–12, ECF No. 122-1; Closing Instrs. at 5, ECF No. 121-11).[3] Rocket Mortgage was responsible for making the second tax installment payment. (Am. Compl. ¶ 5). It never did so, however, and in February 2022, the Akkuses received a notice from the City of Baltimore that their 2021 property tax payment was past due in the amount of $2,415.89, plus penalties and interest. (C. Akkus Dep. 24:10–16, ECF No. 121-14).

At this point, Rocket Mortgage had already transferred servicing rights on the Akkus loan to Lakeview Loan Servicing d/b/a Mr. Cooper ("Mr. Cooper"). (See Lech Dep. 29:2–9). On February 25, 2022, the Akkuses sent a message to Mr. Cooper, informing the servicer about their delinquent property taxes and requesting confirmation of payment. (Mr. Cooper Mar. 31, 2022 Letter ["Mr. Cooper Letter"] at 226–27, ECF No. 121-15).[4] On March 16, 2022, Mr. Cooper informed the Akkuses that it would send the full tax amount to the City of Baltimore via FedEx Priority Overnight shipping. (Mar. 16, 2022 Mr. Cooper Email, ECF No. 145-5). However, as of March 25, 2022, the Akkuses contacted Mr. Cooper to express their concerns that the City had not yet received the tax payment and that a tax sale of their property was scheduled for April 1, 2022. (Mr. Cooper Letter at 226–27). Fearing the loss of their home, the Akkuses submitted an out-of-pocket tax payment on March 28, 2022. (City of Balt. Payment Confirmation at 1, ECF No. 132-3). Although

---

[3] Unless otherwise noted, citations to the record refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[4] Citations to the Mr. Cooper Letter use the pagination designated by the Akkuses.

the Akkuses were ultimately reimbursed, they assert that they suffered severe emotional distress and a temporary loss of use of their funds as a result of the events described above. (Am. Compl. ¶¶ 50–51).

### 2.    The Perrys' Loan

On January 4, 2021, Jonathan and Lydia Perry (the "Perrys") obtained a cash-out refinance loan from Rocket Mortgage to make improvements to their home in Philadelphia, Pennsylvania. (Am. Compl. ¶ 14). Like the Akkuses, the Perrys paid their 2021 annual property tax payment on their new loan at closing, in January 2021. (Id. ¶ 58a; Rocket Mortgage Account Notes ["Acct. Notes"] at 21–22, ECF No. 121-22). Afterwards, Rocket Mortgage was responsible for submitting all other tax payments to the City of Philadelphia on the Perrys' behalf. (See Am. Compl. ¶ 5).

In February 2022, Rocket Mortgage paid the Perrys' 2022 tax bill in the amount of $13.14. (Lech Dep. 104:7–105:11).[5] On June 6, 2022, the City of Philadelphia reported an overdue balance on the Perrys' 2022 property taxes in the amount of $1,301.21, plus $58.56 in interest. (Tax Bill, ECF No. 121-28). On June 21, 2022, Rocket Mortgage mailed the late tax payment, including interest, to the City of Philadelphia. (Lech Dep. 104:7–05:11, 109:10–11:20). As of June 30, 2022, however, the City continued to report the Perry loan as delinquent. (Danella Decl. ¶ 3(h), ECF No. 115-7 ("From March 31, 2022 up to and including June 30, 2022, the Philadelphia Tax Center . . . published information showing that the real estate taxes . . . were not paid in full.")). Therefore, to avoid the pending threat

---

[5] Rocket Mortgage concedes that it had anticipated that an amount of $1,314.41 would be due. (Lech Dep. 104:7–105:11).

of a tax sale, the Perrys paid their property taxes out-of-pocket the same day. (Receipt, ECF No. 115-32).

On August 31, 2022, Rocket Mortgage Team Captain Jennifer Poole sent an email to other Rocket Mortgage staff, explaining that the Perrys' overdue balance was due to an "error confirmed as [Rocket Mortgage] tax team because updated report happen[ed] 2/17 for full amount however we instead paid difference for refund and payment due . . . ." (Poole Aug. 31, 2022 4:00PM Email at 1–2, ECF No. 119-4). Poole also spoke with Mr. Perry on a recorded line, indicating that Rocket Mortgage only remitted a $13 payment for the Perrys' 2022 taxes "instead of the just over $1,300 it should have been," which was done "in error." (Poole Call Tr. 25:21–26:12, ECF No. 119-3). At some point unknown to the Court, the City of Philadelphia issued a refund to the Perrys for their June 30th tax payment. (J. Perry Dep. 83:21–84:5, ECF No. 121-30). Like the Akkuses, the Perrys claim that they suffered severe emotional distress and a temporary loss of use of their funds as a result of the events described above. (Am. Compl. ¶¶ 61, 73).

**B.    Procedural Background**

The Akkuses filed the original Complaint on behalf of themselves and a class of Rocket Mortgage loan borrowers in the Circuit Court for Anne Arundel County on October 6, 2022. (ECF No. 4). On November 11, 2022, Rocket Mortgage removed the case to this Court on the basis of federal question jurisdiction. (Notice of Removal at 1, ECF No. 1). On January 18, 2023, the Perrys filed a Motion to Intervene. (ECF No. 22). By consent, Plaintiffs filed an Amended Complaint on January 30, 2023. (ECF No. 31). The Amended Complaint asserts the following claims: violation of RESPA, 12 U.S.C. § 2605(g), for

failure to pay taxes from the escrow accounts as to the named Plaintiffs and the class (Count I); violation of RESPA, 12 U.S.C. § 2605(e)(k) and 12 C.F.R. §§ 1024.35, 1024.36 as to the Akkuses for Rocket Mortgage's failure to respond to or conduct a reasonable investigation of the Qualified Written Request letter (Count II); and violation of RESPA, 12 U.S.C. § 2605(e)(k) and 12 C.F.R. §§ 1024.35, 1024.36 as to the Perrys for Rocket Mortgage's failure to respond to or conduct a reasonable investigation of the QWR letter (Count III). (Am. Compl. ¶¶ 91–121). Plaintiffs seek compensatory and statutory damages. (Id. ¶¶ 114, 121).

On March 1, 2023, Rocket Mortgage filed a Motion to Dismiss (ECF No. 32), which this Court granted in part and denied in part on February 7, 2024 (ECF No. 40). Specifically, the Court granted the Motion as to Counts II and III and denied the Motion as to Count I. (Feb. 7, 2026 Mem. Op. at 16, ECF No. 39). Rocket Mortgage answered the Amended Complaint on March 27, 2024. (ECF No. 51).

On September 2, 2025, after engaging in discovery, Plaintiffs filed a Motion to Certify Class (ECF No. 116), and Rocket Mortgage filed a Motion for Summary Judgment (ECF No. 121). On October 15, 2025, Plaintiffs filed their Opposition and Cross-Motion for Summary Judgment (ECF No. 130), Rocket Mortgage opposed Plaintiffs' Motion to Certify Class (ECF No. 132), and Rocket Mortgage moved to strike certain portions of Plaintiffs' Statement of Facts (ECF No. 135). On November 14, 2025, Plaintiffs filed their Opposition to Rocket Mortgage's Motion to Strike (ECF No. 143), their Reply in support of their Motion to Certify Class (ECF No. 144), and Rocket Mortgage filed its Reply in support of its Motion for Summary Judgment (ECF No. 145). On December 5, 2025,

Rocket Mortgage filed its Reply in support of the Motion to Strike (ECF No. 154), and Plaintiffs filed their Reply in support of the Cross-Motion for Summary Judgment (ECF No. 155).

## II.   DISCUSSION

### A.   <u>Motion for Class Certification</u>

#### 1.   Standard of Review

Class actions are subject to Federal Rule of Civil Procedure 23(a), which requires: (1) numerosity of parties; (2) commonality of factual or legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy of representation. <u>Thorn v. Jefferson–Pilot Life Ins. Co.</u>, 445 F.3d 311, 318 (4th Cir. 2006); <u>see</u> Fed.R.Civ.P. 23(a).

After satisfying the Rule 23(a) prerequisites, the plaintiff must show that the proposed class action also satisfies one of the three enumerated conditions in Rule 23(b). <u>See</u> <u>Gunnells v. Healthplan Servs., Inc.</u>, 348 F.3d 417, 423 (4th Cir. 2003). Here, Plaintiffs seek class certification under Rule 23(b)(3). (<u>See</u> Pls.' Mot. Class Certif. ["Mot. Class Certif."] at 25, ECF No. 119-1). Rule 23(b)(3) provides that a class may be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). The party seeking certification bears the burden of proof, and each requirement of Rule 23(a) and (b) must be satisfied by a preponderance of the evidence. <u>In re Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d 305, 316, n.14, 320 (3d Cir. 2008).

Ultimately, a district court has "wide discretion" in deciding whether class certification is appropriate. Ward v. Dixie Nat'l Life Ins. Co., 595 F.3d 164, 179 (4th Cir. 2010) (quoting Cent. Wesleyan Coll. v. W.R. Grace & Co., 6 F.3d 177, 185 (4th Cir. 1993)). Courts evaluating class certification "must rigorously apply the requirements of Rule 23 . . . ." Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 345 (4th Cir. 1998). Although the court's analysis must be "rigorous" and "'may entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." Amgen Inc. v. Ct. Ret. Plans and Tr. Funds, 568 U.S. 455, 465–66 (2013) (citation omitted) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011)). The merits may be considered only to the extent "that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Id. at 466.

### 2. Analysis

As a threshold matter, the Court begins by addressing Rocket Mortgage's argument that Plaintiffs do not satisfy the injury-in-fact requirement of Article III, and thus, do not have standing to represent the class. (See Def.'s Opp'n Pls.' Mot. Class Certif. ["Opp'n Mot. Class Certif."] at 14–15, ECF No. 132).

"In a class action, we analyze standing based on the allegations of personal injury made by the named plaintiffs." Baehr v. Creig Northrop Team, P.C., 953 F.3d 244, 252 (4th Cir. 2020) (quoting Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc., 892 F.3d 613, 620 (4th Cir. 2018)); see also Moyer v. Home Point Fin. Corp., No. RDB-20-3449, 2023 WL 6642663, at *10 (D.Md. Oct. 11, 2023) ("[A]t the class certification stage, the named

[p]laintiffs are only required to satisfy the pleading-stage burden and are not obliged to demonstrate that every putative class member has standing at the class certification stage.").

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" . . . ; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000).

Here, Plaintiffs allege two distinct injuries in connection with Rocket Mortgage's alleged RESPA violation: (1) loss of use of their escrow funds due to Rocket Mortgage's failure to make timely property tax payments; and (2) emotional distress. (Am. Compl. ¶¶ 50b–50c, 64, 73e, 74). Specifically, Plaintiffs assert that despite making timely escrow payments to Rocket Mortgage in accordance with the terms of their loan, Rocket Mortgage failed to pay Plaintiffs' property taxes at the time they were due, as required by law. (Id. ¶¶ 36, 51). And as result, during the period of Rocket Mortgage's non-payment, Plaintiffs lost use of the money they paid into escrow. (Id. ¶¶ 64, 67, 74; Mot. Class Certif. at 17). Plaintiffs also assert that because of Rocket Mortgage's conduct, they "suffered loss of sleep, anger, fear, anxiety, and marital arguments . . . ." (Id. ¶ 50b; see id. ¶¶ 50c, 73e).

Although Rocket Mortgage disputes these and other harms alleged by Plaintiffs, the Court finds that Plaintiffs have plausibly alleged an injury-in-fact. To be sure, emotional damages on their own are generally insufficient to confer Article III standing, but when paired with Plaintiffs' allegations as to economic damages, in the form of loss of use of

funds, Plaintiffs damages pass Article III muster. See Lyons v. PNC Bank, N.A., No. SAG-20-02234, 2026 WL 364308, at *9 (D.Md. Feb. 10, 2026) (finding that plaintiff's loss of use of funds constituted a concrete injury for standing purposes); Van v. LLR, Inc., 962 F.3d 1160, 1164 (9th Cir. 2020) ("[W]e hold that the temporary loss of use of one's money constitutes an injury in fact for purposes of Article III."); MSPA Claims 1, LLC v. Tenet Fla., Inc., 918 F.3d 1312, 1318 (11th Cir. 2019) ("The inability to have and use money to which a party is entitled is a concrete injury."); Littleton v. IQ Data Int'l, Inc., No. 4:24-CV-65-FL, 2024 WL 4594231, at *2 (E.D.N.C. Oct. 28, 2024) ("[P]laintiff satisfies the injury element [of standing] because she makes allegations about damaged credit, economic damages, and emotional injuries.") Accordingly, at this stage, the injury in fact element is met for Article III standing.[6]

On the merits, Rocket Mortgage argues that this Court should deny class certification because Plaintiffs fail to satisfy any of the requirements under Rule 23(a) and Rule 23(b). (Opp'n Mot. Class Certif. at 20). The Court will begin by evaluating whether Plaintiffs have satisfied the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed.R.Civ.P. 23(a).

---

[6] Rocket Mortgage does not dispute the other two standing elements (see Opp'n Mot. Class Certif. at 14–20), presumably because they are easily satisfied here. Plaintiffs' alleged injuries—loss of use of funds and emotional distress—can be easily traced to Rocket Mortgage's failure to timely pay Plaintiffs' taxes. (Am. Compl. ¶¶ 7–12, 51, 74). In addition, a favorable decision could redress Plaintiffs' injuries, as the Court could grant Plaintiffs the relief they seek, namely, monetary damages. (Id. at 43–44).

### a.    Numerosity

The first prong of Rule 23(a) requires that the proposed class be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). While "[n]o specified number is needed to maintain a class action," Brady v. Thurston Motor Lines, 726 F.2d 136, 145 (4th Cir. 1984), generally, "a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone," In re Zetia (Ezetimibe) Antitrust Litig., 7 F.4th 227, 234 (4th Cir. 2021) (quoting 1 Newberg on Class Actions § 3:12 (5th ed. 2021)).

Plaintiffs assert that this requirement is easily satisfied here, as the potential class includes at least 20,000 members. (Mot. Class Certif. at 18–19). Rocket Mortgage contests that this number does not align with Plaintiffs' putative class definition. (Opp'n Mot. Class Certif. at 34). The Court disagrees. Plaintiffs' proposed class is defined as:

> All residential loan borrowers who are natural persons [for] whom Rocket served as a servicer of the loan and collected escrow sums related to the loans at any point in time since October 6, 2019, and:
>
> (a) The loans were owned by Fannie Mae or Freddie Mac or were insured or guaranteed by the FHA, VA, or USDA; and
> (b) Between October 6, 2019 and the date of certification, Rocket failed to timely pay the borrower's taxes to the relevant local taxing jurisdiction, or failed to timely pay the borrower's hazard insurance to the borrower's insurance company, on or before the deadline to avoid a penalty; and
> (c) At the time of the failure, Rocket's records showed that the borrower was current or less than 30 days late in making mortgage payments.

(Mot. Class Certif. at 3–4). Plaintiffs arrive at their figure based on data produced by Rocket Mortgage, identifying "23,698 loans out of 6,597,473 loans" during the relevant period where Rocket Mortgage "was delayed in making property tax payments, the taxing authorities assessed penalties or interest, and the borrower was current or less than 30 days late on their loan." (Opp'n Mot. Class Certif. at 34). On these facts, the Court concludes that the purported class size aligns with Plaintiffs' class definition. Rocket Mortgage does not dispute that these loans were owned by Fannie Mae or Freddie Mac, were insured by FHA, VA, or USDA, or that they fail any of the class criteria set by Plaintiffs. (See generally id.). Because Plaintiffs have identified over 20,000 potential class members, the Court finds that the class is sufficiently numerous such that joinder would be impracticable.[7]

### b.    Commonality

The threshold requirements of commonality are not high. Rule 23(a) requires that there be "questions of law or fact common to the class," Fed.R.Civ.P. 23(a)(2), but only a single common issue is needed to satisfy this requirement, Chittick v. Freedom Mortg. Corp., No. 1:18-cv-00275 (AJT/TCB), 2021 WL 5326407, at *6 (E.D.Va. May 7, 2021) (citing Cent. Wesleyan Coll. v. W.R. Grace & Co., 143 F.R.D. 628, 636 (D.S.C. 1992),

---

[7] Rocket Mortgage also argues that Plaintiffs fail the numerosity requirement because they fail to demonstrate that any of the more than 20,000 borrowers have Article III standing. (Opp'n Mot. Class Certif. at 34). This argument, however, is misplaced. As indicated earlier, "at the class certification stage, the named [p]laintiffs are . . . not obliged to demonstrate that every putative class member has standing . . . ." Moyer, 2023 WL 6642663, at *10.

aff'd, 6 F.3d 177 (4th Cir. 1993)); see also Wal-Mart Stores, Inc., 564 U.S. at 359 ("[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." (alterations in original)). And the resolution of the common question(s) must affect all or a substantial number of the class members. Brown v. Nucor Corp., 576 F.3d 149, 153 (4th Cir. 2009) (quoting Shipes v. Trinity Indus., 987 F.2d 311, 316 (5th Cir. 1993)).

The Court finds that Plaintiffs have met their burden as to commonality. In Chittick, a case fairly similar to this one, plaintiffs alleged that defendant Freedom Mortgage violated Section 2605(g) for failure to pay property taxes or insurance premiums in a timely manner. 2021 WL 5326407, at *3, 5. Plaintiffs there sought to certify a class of all Freedom Mortgage borrowers who had escrow accounts and lost their 2017 local property tax deduction due to defendant's failure to pay their local property taxes. Id. Judge Trenga analyzed the commonality issue as follows:

> Plaintiffs have adequately identified one common issue of law or fact, typical of the claims of the class, as to which the Plaintiffs will fairly and adequately protect the interests of the class: "[W]hether Freedom failed to make property tax and insurance premium payments in full and on time for Harrell, Chittick and all members of the putative class as required by RESPA, which would entitle each class members to actual damages, statutory penalties and attorney's fees." And while Freedom has identified a number of ways in which the Plaintiffs claims may not be typical of the class they seek to represent, "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact." De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983). The Court will therefore deem satisfied the requirements of commonality . . . .

Id. at *7 (internal citation omitted).

13

This Court finds Judge Trenga's analysis instructive. Like the plaintiffs in Chittick, Plaintiffs here argue that there are two common questions of law central to each class members' claims: (1) "[w]hether Rocket failed to timely make tax payments;" and (2) "[w]hether Rocket engaged in a pattern or practice" of failing to do so. (Pls.' Reply Supp. Mot. Class Certif. at 8–9, ECF No. 144; see Mot. Class Certif. at 21). Because the first question is virtually identical to the common issue of law accepted in Chittick, the Court finds that Plaintiffs satisfy commonality under Rule 23(a). See Chittick, 2021 WL 5326407, at *7 (finding that the issue of "whether [defendant] failed to make property tax and insurance premium payments in full and on time" was sufficient to establish commonality in proposed RESPA class action). While Rocket Mortgage contends that RESPA liability requires fact-intensive analysis, "factual differences among the class members' cases will not preclude certification if the class members share the same legal theory." Peoples v. Wendover Funding, Inc., 179 F.R.D. 492, 498 (D.Md. 1998) (citing Brown v. Eckerd Drugs, Inc., 663 F.2d 1268, 1275 (4th Cir.1981), vacated on other grounds, 457 U.S. 1128 (1982)). Because the class members here share the same legal issue the Court concludes that there is commonality.

### c.      Typicality & Adequacy

"To meet the typicality requirement [of Rule 23(a)(3)], a plaintiff must show that the class representative's claims and defenses are 'typical of the claims or defenses of the class.'" Ginwright v. Exeter Fin. Corp., 280 F.Supp.3d 674, 686 (D.Md. 2017) (quoting Fed.R.Civ.P. 23(a)(3)). For a class representative's claims to be considered "typical" of the class, his "interest in prosecuting his own case must simultaneously tend to advance the

14

interests of the absent class members." Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006).

The adequacy requirement turns on the evaluation of: (1) whether the representative's claims are sufficiently interrelated to and not antagonistic with the class's claims as to ensure fair and adequate representation; and (2) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation. Cuthie v. Fleet Rsrv. Ass'n, 743 F.Supp.2d 486, 499 (D.Md. 2010).

"A class is disserved if its representative's claim is not typical of the claims of the class members, for . . . a class representative's atypical claim may prevail on grounds unavailable to the other class members, leaving them in the lurch." CE Design Ltd. v. King Architectural Metals, Inc., 637 F.3d 721, 724 (7th Cir. 2011). The typicality requirement thus can "merge[] with the further requirement that the class representative 'will fairly and adequately protect the interests of the class.'" Id. (citing Fed.R.Civ.P. 23(a)(4)).

Here, the Court finds neither typicality nor adequacy satisfied. In Plaintiffs' Motion for Class Certification, Plaintiffs assert that they will pursue their individualized, actual damages in this case, but class members will have to recover actual damages in separate litigation, after the resolution of the class action. (Mot. Class Certif. at 7–8, 8 n.6). According to Plaintiffs, this does not present a conflict of interest. The Court disagrees.

To prevail on a Section 2605(g) claim, a plaintiff must prove that: (1) the loan servicer committed a statutory violation under section 2605(g); and (2) plaintiff sustained "actual damages . . . as a result of [the loan servicer's] failure." Baez v. Specialized Loan Servicing, LLC, 709 F.App'x. 979, 982 (11th Cir. 2017) (citing Renfroe v. Nationstar

Mortg., LLC, 822 F.3d 1241, 1244 (11th Cir. 2016)). Because RESPA liability turns on a plaintiff's ability to establish both elements, the fact that potential class members cannot establish actual damages in this action, but Plaintiffs can, means that only Plaintiffs can establish their claim. See Sabatino v. Pill, No. 1:17CV72, 2017 WL 4079402, at *4 (N.D.W.Va. Sept. 14, 2017) ("[P]laintiff cannot state a claim under RESPA unless she pleads that she 'suffered actual damages' as a result of the defendants' RESPA violation." (quoting Luciw v. Bank of Am., N.A., No. 5:10CV02779, 2011 WL 566833, at *4 (N.D.Cal. Feb. 15, 2011))). In other words, if class members prove that Rocket Mortgage committed a statutory violation under section 2605(g), they will be left "in the lurch" as to half of their claim, CE Design Ltd., 637 F.3d at 724, whereas Plaintiffs will have the opportunity to have their entire claim resolved in this action. Because Plaintiffs' "prosecution of [their] case" will not "simultaneously . . . advance the interests of the . . . class," the Court finds that Plaintiffs' claim is precisely the type of atypical claim that courts generally forbid. Deiter, 436 F.3d at 466; see CE Design Ltd., 637 F.3d at 724. Accordingly, Plaintiffs fail to meet their burden as to typicality and adequacy, and the Court will deny Plaintiffs' Motion for Class Certification.[8]

**B.    Cross-Motions for Summary Judgment**

  **2.    Standard of Review**

---

[8] Because a failure to satisfy Rule 23(a) precludes class certification, the Court does not address the Parties' arguments related to Rule 23(b). Cheng v. Liu, No. 23-1806, 2024 WL 3579606, at *1 n.1 (4th Cir. July 29, 2024).

Both Parties here seek summary judgment under Federal Rule of Civil Procedure 56(a). This rule provides that a party seeking summary judgment must show "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986).

When both Parties file motions for summary judgment, the Court evaluates "each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." Bryant v. Better Bus. Bureau of Greater Md., Inc., 923 F.Supp. 720, 729 (D.Md. 1996) (quoting Towne Mgmt. Corp. v. Hartford Acc. and Indem. Co., 627 F.Supp. 170, 172 (D.Md. 1985)).

The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). A "material fact" is one that might affect the outcome of a party's case. See Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the

17

nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Fed.R.Civ.P. 56(a)).

If a party carries this burden, then the Court will award summary judgment unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. See Fed.R.Civ.P. 56(e). If sufficient evidence exists for a reasonable fact-finder to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented, and summary judgment will be denied. See Anderson, 477 U.S. at 248. However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. Id. at 252.

### 3.     Analysis

Both Parties argue that they are entitled to summary judgment on Plaintiffs' claims for actual and statutory damages under RESPA, 12 U.S.C. § 2605(g), for Rocket Mortgage's failure to pay taxes from Plaintiffs' escrow accounts (Count I). (Def.'s Mem. L. Supp. Mot. Summ. J. ["Def.'s MSJ"] at 16–29, ECF No. 122; Pls.' Combined Mot. Summ. J. & Opp'n Def.'s MSJ at 9, ECF No. 138).

As relevant here, RESPA requires loan servicers to make timely payments from a borrower's escrow account "for taxes, insurance premiums, and other charges . . . as such

18

payments become due." 12 U.S.C. § 2605(g); see Akkus v. Rocket Mortg., LLC, 715 F.Supp.3d 726, 731 (D.Md. 2024). To prevail on their RESPA claim, Plaintiffs must show that: (1) Rocket Mortgage violated Section 2605(g) by failing to make timely payments to the tax authorities; and (2) Plaintiffs sustained actual damages as a result of Rocket Mortgage's statutory violation. See, e.g., Baez, 709 F.App'x. at 982 (explaining that to recover under RESPA, plaintiff must show loan servicer's failure to comply with a RESPA obligation and that she suffered actual injury as a result). At bottom, the Court finds there are genuine disputes of material fact as to Plaintiffs' RESPA claim and will deny both Parties' Motions for Summary Judgment.

The Court begins and ends it analysis by evaluating the evidence as to Rocket's Mortgage's alleged RESPA violation.

### a.    Statutory Violation

As discussed above, RESPA requires Rocket Mortgage to make property tax payments, on behalf of its borrowers, as such payments become due to the relevant tax authorities. See 12 U.S.C. § 2605(g). Here, Rocket Mortgage argues that any delayed property tax payments were not attributed to Rocket Mortgage but were the "result of third-party conduct beyond Rocket Mortgage's control." (Def.'s MSJ at 27). As to the Akkuses' 2021 tax payment, Rocket Mortgage contends that the City of Baltimore did not report any balance on the couple's property taxes at the time Rocket Mortgage attempted to submit payment. (Id. at 28). Specifically, Rocket Mortgage asserts that this error occurred because the City failed to update its records to reflect the Akkuses' tax election as semi-annual, instead of annual. (Lech Dep. 21:11–22:16, 28:22–29:1). Curiously, Rocket Mortgage does

not provide evidence of such miscommunication from the City. Instead, Rocket Mortgage submits testimony that its third-party vendor, CoreLogic, sent Rocket Mortgage a report on the Akkuses' property tax balance, based on information it received from the City. (Lech Dep. 22:9–16 (Based on the "reporting received from CoreLogic, [Rocket Mortgage's] third party tax vendor, the reporting received from the [C]ity had it marked as . . . zero dollars due for the December tax installment in 2021.")).

On these facts, the Court finds that Rocket Mortgage has not demonstrated the absence of any genuine dispute of material fact on the issue of its RESPA liability as to the Akkuses'. Testimony that Rocket Mortgage's vendor reported a zero-balance on the Akkuses' taxes is insufficient for Rocket Mortgage to prevail as a matter of law. Based on the record before the Court, it is unclear whether the City of Baltimore committed the reporting error or whether the error is attributable to Rocket Mortgage's tax reporting system. As such, the Court finds that a genuine dispute of material fact exists as to whether Rocket Mortgage failed to make the Akkuses' tax payment as it became due by the City of Baltimore.

As to the Perrys, Rocket Mortgage contends that the City of Philadelphia reported an inaccurate amount due on the Perrys' 2022 property taxes; thus, any untimely tax payment was the result of the City's error, for which Rocket Mortgage is not liable. (Def.'s MSJ at 28). More specifically, Rocket Mortgage's Senior Director for Servicing Governance, Calvin Lech, attests that when Rocket Mortgage went to pay the Perrys' 2022

taxes in February, the City reflected only $13.14 due. (Lech Dep. 106:2–21, 108:8–15).[9]

Plaintiffs, however, offer evidence that casts doubt on Rocket Mortgage's claims. During a phone call between Jonathan Perry and Rocket Mortgage's Team Captain of Servicing, Jennifer Poole, Poole explained that the $13.14 payment was made in error, due to Rocket Mortgage's own miscalculation. (Poole Call Tr. 25:21–26:21 (explaining that Rocket Mortgage miscalculated Perrys' tax payment based on an earlier refund from the City)). Further, an email from Poole to Rocket Mortgage's executive team suggests that the City of Philadelphia appropriately reported the Perrys' 2022 taxes in February, when Rocket Mortgage made the $13.14 payment. (Poole Aug. 31, 2022 4:00PM Email at 2 (describing unpaid 2022 property taxes as "error confirmed as [Rocket Mortgage] tax team because update reported happen[ed] 2/17 for full amount however we instead paid difference for refund and payment due on 2/22"). Citing no evidence to the contrary, Rocket Mortgage attempts to deflect from this evidence by claiming that the errors referenced in Rocket Mortgage's internal correspondence refer to errors that are not the subject of Plaintiffs' lawsuit. (Def.'s Consol. Reply Supp. Def.'s Mot. Summ. J. & Opp'n Pls.' Mot. Summ. J. at 13, ECF No. 145) The Court is unpersuaded by this argument.

---

[9] The record reflects that Rocket Mortgage timely paid the $13.14 amount in advance of the City's March 31st deadline, even though it had anticipated that an amount of $1,314.41 would be due. (Lech Dep. 104:7–05:11; see also Tax Info Disclosure, ECF No. 121-23 (showing March 31st deadline)). On June 6, 2022, however, the City of Philadelphia reported an overdue balance on the Perrys' 2022 property taxes in the amount of $1,301.21, plus $58.56 in interest. (Tax Bill, ECF No. 121-28).

The conflicting testimony of Lech and Poole creates a genuine dispute of material fact as to whether the overdue balance on the Perrys' account was due to Rocket Mortgage's error in paying the $13.14, or a reporting error by the City of Philadelphia. Accordingly, the Court cannot grant summary judgment to either Party and will deny both Motions as to Plaintiffs' Section 2605(g) claim.[10]

### III.   CONCLUSION

For the foregoing reasons, the Court will deny Plaintiffs' Motion for Class Certification (ECF No. 116) and both Parties' Motions for Summary Judgment (ECF Nos. 121, 130), and the Court will deny as moot Rocket Mortgage's Motion to Strike (ECF No. 135). A separate Order follows.

Entered this 27th day of May, 2026.


_____/s/_____

George L. Russell, III
Chief United States District Judge

---

[10] Because the Court finds that there are genuine issues of material fact as to the first element of Plaintiffs' RESPA claim—whether Rocket Mortgage committed a statutory violation of Section 2605(g)—the Court declines to reach the remaining element of actual damages. The Court will also preserve the issue of statutory damages for trial. See Houck v. NewRez LLC, No. MJM-24-1519, 2025 WL 987455, at *4 (D.Md. Apr. 2, 2025) (noting that a borrower cannot recover statutory damages without first recovering actual damages); see also Akkus v. Rocket Mortg., LLC, 715 F.Supp.3d 726, 734 (D.Md. 2024) ("[I]f a plaintiff fails to show actual damages, she likewise may not claim statutory damages for any alleged pattern or practice of noncompliance.").